UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

THOMAS CARTER #645573,

        Plaintiff,        Case No. 2:18-cv-00003

v.        HON. GORDON J. QUIST

PATRICIA SUPNICK, et al.,

        Defendants.
_____/

## REPORT AND RECOMMENDATION

This is a civil rights action brought by state prisoner Thomas Carter pursuant to 42 U.S.C. § 1983.  Plaintiff alleges that while he was incarcerated in the Alger Correctional Facility Defendants Patricia Supnick, I. Mattson, Joseph M. Naeyaert, and J. Lundquist violated his free speech, access to the courts, due process, and equal protection rights.  Plaintiff alleges that Defendants retaliated against him and committed gross negligence.  Due to Plaintiff's complaints, he was transferred to the Chippewa Correctional Facility (URF).  Plaintiff alleges that Defendants refused to allow him to copy a motion for relief from judgment involving his state criminal appeal and related documents.  Plaintiff was forced to send the court his originals, which Defendants "intentionally destroyed out of retaliation."  Plaintiff subsequently learned that the Wayne County Circuit Court never received his motion for relief from judgment. Defendants filed a motion for summary judgment (ECF No. 16) on the ground that Plaintiff failed to properly exhaust his available administrative remedies against Defendants Naeyaert and Lundquist.  Plaintiff filed a response (ECF No. 18).

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005); *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)); *see also Tucker v. Union of Needletrades Indus. & Textile Employees*, 407 F.3d 784, 787 (6th Cir. 2005). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-216 (2007). A moving party without the burden of proof need show only that the opponent cannot sustain his burden at trial. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir.

1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)).  The United States Court of Appeals for the Sixth Circuit repeatedly has emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it."  *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same).  Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact."  *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

       Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies.  *See Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001).  A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process.  *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999).  In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules.  *Jones v. Bock*, 549 U.S. 199, 218-19 (2007); *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'"  *Jones*, 549 U.S. at 218-19.  In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or

3

"where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 136 S.Ct. 1850, 1859-1860 (2016).

MDOC Policy Directive 03.02.130 (effective July 9, 2007), sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ P. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ P, V. The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ V. The Policy Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ R (emphasis in original). "But when prison officials decline to enforce their own procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those rules does not create a procedural bar to that prisoner's subsequent federal lawsuit." *Hardy v. Agee*, No. 16-2005, at 3 (6th Cir. Mar. 5, 2018) (unpublished) citing *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010). The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by

4

> intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process."). An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits. *See id*. at 325. We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court." *Id*. at 324.

*Mattox v. Edelman*, 851 F.3d 583, 590-591 (6th Cir. 2017).[1]

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. *Id.* at ¶¶ T, BB. The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for a medical care grievances. *Id.* at ¶ DD. If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ T, FF. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶¶ T, FF. The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ GG. "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall

---

[1] In *Holloway v. Mclaren*, No. 15-2184 (6th Cir., April 7, 2016) (unpublished), the Sixth Circuit concluded that where a plaintiff fails to name each defendant in his grievance, the un-named defendants may not be dismissed for failure to exhaust grievance remedies if the MDOC did not reject the grievance under the policy requiring a grievant to name each individual involved. The Sixth Circuit stated: "Because MDOC officials addressed the merits of Holloway's grievance at each step and did not enforce any procedural requirements, Holloway's failure to identify the defendants named in this lawsuit and to specify any wrongdoing by them in his grievances cannot provide the basis for dismissal of his complaint for lack of exhaustion." *Id*. at 3. In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints." slip op. at 16. For example, grieving a doctor about his failure to give cardiac catheterization failed to grieve the claim that the doctor erred by not prescribing Ranexa.

5

generally be completed within 120 calendar days unless an extension has been approved . . . ." *Id.* at ¶ S.

In addition, the grievance policy provides that, where the grievance alleges conduct that falls under the jurisdiction of the Internal Affairs Division pursuant to PD 01.01.140, the prisoner may file his Step I grievance directly with the inspector of the institution in which the prisoner is housed, instead of with the grievance coordinator, as set forth in ¶ V of PD 03.02.130. *Id.* at ¶Q. In such instances, the grievance must be filed within the time limits prescribed for filing grievances at Step I. *Id.* Regardless of whether the grievance is filed with grievance coordinator or the inspector, the grievance will be referred to the Internal Affairs Division for review and will be investigated in accordance with PD 01.01.140. The prisoner will be promptly notified that an extension of time is needed to investigate the grievance. *Id.*

Plaintiff asserts that four grievances are relevant to the issues set forth in his complaint. Plaintiff has identified LMF 16-02-0271-14f, LMF 16-06-1719-14z, LMF 16-09-2565-17b, and LMF 16-07-2065-15f. Plaintiff named Defendants Naeyaert and Lundquist in two of those grievances. Each of those grievances were rejected at Step II as untimely.

In grievance LMF 16-06-1719-14z, Plaintiff stated at Step I that he was denied legal writer services by Defendants Mattson and Supnick on June 13, 2016. (PageID.170). Plaintiff's grievance was denied at Step I because he was not denied legal writer services. (PageID.171). Neither Defendants Naeyaert or Lunquist were named in this grievance. In grievance LMF 16-02-0271-14f, Plaintiff stated that he sent his legal work to Defendants Supnick and Mattson and they denied him copies on January 25, 2016. (PageID.204). The Step I grievance was denied and Plaintiff was provided with instructions on the proper procedure for obtaining copies when a prisoner has no funds. *Id*. Plaintiff did not name Defendants Naeyaert or Lunquist in this grievance.

6

Plaintiff named Defendants Naeyaert and Lundquist at Step I of grievance LMF 16-09-2565-17b. Plaintiff included an incident date of August 8, 2016, stating that Defendant Naeyaert caused him to be transferred in retaliation for grievances, and that Defendant Lundquist was involved in losing his legal mail. (ECF No. 17-3, PageID.150). Plaintiff's grievance was denied at Step I and rejected at Step II as untimely filed: "The Step I grievance response was returned to you on 9/28/16. The Step II appeal form was sent to you on 10/11/16 at your request, and was to be returned to this office by 10/17/16. Your appeal was not returned to this office until 10/31/16." (PageID.149). Plaintiff appealed to Step III, explaining that he did not receive the Step II appeal form on 10/11/16 due to his transfer. Plaintiff explained that he sent the Step II appeal on October 21. (PageID.148). The Step III appeal was denied. (PageID.147).

On July 28, 2016, Plaintiff submitted a Step I grievance, LMF 16-07-2065-15f, stating an incident date of July 25, 2016. In his grievance, Plaintiff asserted that he gave Defendant Naeyaert his original copy of his 6.500 motion to send to the court on January 29, 2016. Plaintiff states that Defendant Naeuaert then gave it to Defendant Lundquist to mail to the court. Plaintiff states that his motion never arrived at the court. Plaintiff's Step I grievance was rejected because staff indicated that Plaintiff's legal mail was sent out and that the mail was handled properly. (ECF No. 17-3, PageID.165). Plaintiff's Step II grievance was rejected as untimely because the Step I response "was returned to you on 8/4/16. The Step II appeal form was sent to you on 8/25/16 at your request, and was supposed to be requested by 8/18/16. Your appeal was not filed in a timely manner as required by policy." (PageID.164). Plaintiff appealed to Step III, explaining that he arrived at his new prison on August 8 and was transferred by Defendant Naeyaert to make sure he missed his grievance deadline. (PagID.163). Plaintiff's Step III appeal was denied. (PageID.162).

7

In the opinion of the undersigned, a question of fact exists regarding whether Plaintiff properly exhausted his grievance remedies. It appears that Plaintiff exhausted the remedies that were available to him as soon as he could under the circumstances. Plaintiff was transferred to a different prison while he was grieving his issues against Defendants Naeyaert and Lundquist. It appears that Plaintiff could not have timely filed his Step II grievances due to the prison transfer which caused the delay in his receipt of the Step I responses. Defendants have not fully developed the record. In the opinion of the undersigned, Plaintiff has shown that his untimely filings were the result of his transfer to a new prison and the late date that he received the Step I responses.

For the foregoing reasons, I recommend that Defendants' motion for summary judgment (ECF No. 16) be denied.

/s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated: January 7, 2019

**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).