UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

THOMAS CARTER #645573,

    Plaintiff,

v.

PATRICIA SUPNICK, et al.,

    Defendants.

_____/

Case No. 2:18-cv-00003

Hon. Gordon J. Quist
U.S. District Judge

## REPORT AND RECOMMENDATION

**I.  Introduction**

This is a civil rights action brought by state prisoner Thomas Carter pursuant to 42 U.S.C. § 1983. Carter says that while he was incarcerated at the Alger Correctional Facility (LMF) between November 19, 2015, and September 8, 2016, Defendants library manager Patricia Supnick, library assistant Lisa Mattson, counselor Joseph M. Naeyaert, and mailroom clerk Jessica Lundquist violated his constitutional rights to free speech, access to the courts, due process, and equal protection. These claims all relate to Carter's attempts to obtain a judgment in his favor in state court with respect to multiple felony convictions against him in 2011.

Defendants filed a motion for summary judgment. (ECF No. 46). Carter filed a response. (ECF No. 55.)  I respectfully recommend that the Court grant the motion for summary judgment and dismiss this case.

**II.  Factual Allegations**

In 2011, following a jury trial, Carter was convicted of kidnapping, first degree criminal sexual conduct, and second degree criminal sexual conduct. *People v.*

*Carter*, No. 310865, 2014 WL 2118080 (Mich. Ct. App. May 20, 2014). He was sentenced as a third-offense habitual offender. *Id*. The Michigan Court of Appeals affirmed his convictions on May 20, 2014. *Id*. The Michigan Supreme Court subsequently denied Carter's application for leave to appeal the decision of the Court of Appeals. *People v. Carter*, 497 Mich. 952, 858 N.W.2d 43 (2015). Carter says that he had until May of 2016 to file his federal petition for a writ of habeas corpus or motion for relief from judgment in the Michigan courts.[1] (ECF No. 1, PageID.8.)

Carter says that while he was imprisoned at LMF, he prepared a motion for relief from judgment and was also working on a petition for a writ of habeas corpus. His claims here all relate to his attempts to copy, type, mail and file these documents, and Defendants' alleged efforts to interfere with those efforts.

As an overview, the Court sees Carter's factual claims as assertions that Defendants violated his constitutional rights by (1) limiting his ability to obtain copies of legal documents, (2) throwing out legal mail that he wanted sent, (3) interfering with his opportunity to get assistance from a prisoner legal writer, and (4) having him transferred to a different prison.

---

[1] Carter filed a petition for writ of habeas corpus in the Eastern District of Michigan on April 25, 2016. On September 22, 2016, the Court granted Carter's motion to stay the petition. *Carter v. Woods*, No. 2:16-CV-11489, 2016 WL 5661591 (E.D. Mich. Sept. 30, 2016). On November 7, 2016, and January 17, 2017, the Court granted Carter's motions to extend time to file a post-conviction motion. The petition is still being held in abeyance. Carter also unsuccessfully filed a complaint in the Eastern District of Michigan challenging his convictions in Case No. 4:17-cv-11074.

2

The sequence of events began, according to Carter, in November 2015, when Defendant Mattson refused to photocopy his legal documents. (*Id.*) Carter says Mattson complained to Defendants Naeyaert, Mattson, and Supnick. (*Id.*, PageID.9.) Carter says that Warden Bauman sent Carter a memorandum with instructions for Carter to properly obtain photocopies from Defendant Supnick and an explanation that Defendant Mattson had followed proper procedures in denying the photocopy request. (*Id.*)

Carter attached this exhibit to his complaint:

To C Bauman

Ex. 6

On November 19, 2015 Prisoner Carter 645573 requested copies totally $10.20 (per Legal Photocopy Disbursement form filled out by Prisoner Carter). Prisoner Carter 645573's account was checked by library staff. Prisoner Carter 645573's account had $6.93 at the time. Prisoner Carter 645573 was denied copies due to inadequate funds. Prisoner Carter 645573 needed to show documentation of the case and cited the court rule to receive any copies per LMF OP 05.03.116 A. Prisoner Carter 645573 did neither.

P. Supnick, Library Manager
11/23/2015

Carter #645573 A-240

There has been no violations by Library Staff concerning your Library Request.

Bauman, Warden
12/1/15

(ECF No. 1-1, PageID.29).

Carter says he sent another request for photocopies in December of 2015. (*Id.*) Carter received authorization by Defendant Mattson for photocopies. (*Id.*) Carter gave his documents to Defendant Naeyaert to send to the library. (*Id.*) Carter alleges that Defendant Supnick informed him that many of the documents could not be reproduced and that Carter needed to hand-copy them. (*Id.*, PageID10.) Carter has attached a Legal Photocopy Disbursement Authorization Form to his complaint. The form, which is shown below, explained the reason for the denial and directed Carter to re-submit his request.

**Authorization Denied Because:**
[X] Inadequate funds, and does not qualify for a legal photocopy loan.
[ ] The following additional information is needed to process this request: Much of these documents are reproducible
[X] Other: —the Michigan Const.- you will need hand write out, as well as any law book text or any thing that's cu case law (publised.)

Only Business Office Staff Are to Write in the Section Below

| Obligation Amount | Actual Expense |
|---|---|
| | |
| | |
| | |

—Notorized documents we will copy. Resubmit

Date Posted: _____

(ECF No. 1-1, PageID.33).

Carter says he then filed a grievance. He alleges that after he filed a grievance, Defendants began to take retaliatory actions against him. (*Id.*) Carter alleges that he was forced to send his original documents to the Court rather than copies. (*Id.*) Carter says that Defendants Naeyaert and Lundquist, after weighing

5

and postmarking his legal mail, caused his documents to be destroyed. (*Id.*, PageID.11-12.)

Carter says that during February and March of 2016, he wrote the court multiple times to discover whether his motion for relief from judgment had been received. (*Id.*, PageID.12.) Carter says that he still had until May of 2016 to file his state court motion for relief from judgment and his federal court habeas action.

Carter says that, around March 23, 2016, he learned that the Wayne County Circuit Court had not received his motion for relief from judgment. (*Id.*) Carter says that he was preparing his habeas petition and that he did not have enough time to prepare another motion for relief from judgment after his original was lost or destroyed.

Carter explains that he sent out his federal habeas petition on April 20, 2016. (*Id.*) Carter says he also made a request to Defendants Supnick and Mattson for a prisoner legal writer so that he could obtain help in filing a pleading to hold his habeas petition in abeyance while he pursued a motion for relief from judgment under Michigan Court Rule 6.500. (*Id.*, PageID.13.) Carter's request for a prisoner legal writer was approved. (*Id.*) Carter asked the legal writer to prepare a motion to stay. (*Id.*) Carter says he filed a grievance against Defendant Supnick and Mattson asserting retaliation, the denial of due process and equal protection, and the denial of access to the legal writer program. (*Id.*) Carter acknowledges that he began to receive assistance from the legal writer in May of 2016, after he filed his grievance. However, around May 24, 2016, Carter says that the legal writer sent

6

back all of his legal documents. Carter attached a memorandum to his complaint that states in part:

> **Motion for Relief From Judgment**
> You also provided 10 detailed headnotes for a motion for relief from judgment pursuant to MCR 6.500 *et seq*; indicating further that you would send notes after the stay was granted. Again, Legal Writers are not allowed to do type jobs or provide advice pursuant to PD 05.03.116 Access to Courts.
>
> You did not indicate that the 6500 motion would be a document completed by you per se. In the context of your grievance against my supervisors for refusing to copy certain pages of your 6500 motion, monetary damages sought and threat of litigation associated thereto; I am of the belief any appearance of an end run around that grievance via the LMF Legal Writer Program may result in denial of service. Keep in mind your grievance was denied specifically as per: PD 05.03.116 ¶N "Funds shall not be loaned, however, for copying a document which can otherwise be produced by the prisoner, except if the document is notarized or was created for the prisoner through the Legal Writer Program and as otherwise required by court order for service of a federal law suit."
>
> On a related matter, given the 10 headnote issues there may be a problem with the 50 page brief limit imposed by 6.502(C). Rejection of the motion may create problems and possible adverse consequences with your federal habeas stay order once issued.

(ECF No. 1-1, PageID.39).

Carter says that Defendant Supnick told him that he would not receive help from the legal writer program because he had filed too many grievances and threatened legal action. (*Id.*, PageID.15.)

Carter alleges that during June and July of 2016, he was approved to go back to general population by Defendant Naeyaert. (*Id.*, PageID.16.) However, in July, Carter grieved Defendants Naeyaert and Lundquist for failing to send out his legal mail. (*Id.*) Carter says that he was then transferred in August to Chippewa Correctional Facility (URF) by Defendant Naeyaert. (*Id.*, PageID.17.) Carter says that Defendant Naeyaert told him that he was transferring him because Carter filed

too many grievances about the lost mail issue. (*Id.*) Carter alleges that URF is a more restrictive prison with less privileges available to prisoners. (*Id.*)

### III. Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

### IV. Access to the Courts

It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The right of access to the courts also prohibits prison officials from erecting barriers that may impede the inmate's access to the courts. *Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992).

An indigent prisoner's constitutional right to legal resources and materials is not, however, without limit.[2] In order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000. In other words, a plaintiff must plead and demonstrate that the shortcomings in the prison legal assistance program or lack of legal materials have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. *Lewis*, 518 U.S. at 351-53; *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996).

The Supreme Court has strictly limited the types of cases for which there may be an actual injury. *Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc). Moreover, the underlying action must have asserted a non-frivolous claim. *Lewis*,

---

[2] Carter was denied photocopies because he could not pay for each requested copy and he was instructed that he could not receive loans for photocopies when he could make copies by hand. The Sixth Circuit has repeatedly held that the constitutional right of access to the courts does not entitle prisoners to free access to photocopying machinery. *See*, *e.g.*, *Bell-Bey, v. Toombs*, No. 93-2405, 1994 WL 105900 (6th Cir. March 28, 1994) ("the law is settled that an inmate does not enjoy a federal constitutional right to unlimited free photocopying services"); *Hawk v. Vidor*, No. 92-2349, 1993 WL 94007, *1 (6th Cir. March 31, 1993) ("the right to have access to the courts is not interpreted as requiring unlimited access to photocopiers"); *Al-Jabbar v. Dutton*, No. 92-5004, 1992 WL 107016, at *1 ("a prisoner's right of access to the courts does not guarantee him unlimited photocopying at the state's expense") (6th Cir. May 19, 1992); *Bond v. Dunn*, No. 89-6181, 1989 WL 149988, at *1 (6th Cir. Dec. 12, 1989) ("The constitutional right of access to the courts does not require that prison officials provide inmates free access to photocopying machinery"), *cert. denied*, 494 U.S. 1006 (1990); *Fazzini v. Gluch*, No. 88-2147, 1989 WL 54125, *2 (6th Cir. May 23, 1989) ("The right of access to the courts does not require that prison officials provide free, unlimited access to photocopy machines").

518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (*Lewis* changed actual injury to include requirement that action be non-frivolous).

In addition, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3). "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 416. The plaintiff must show that "a nonfrivolous legal claim ha[s] been frustrated or was being impeded." *Id.* at 415. And the complaint must "state the underlying claim in accordance with Federal Rule of Civil Procedure 8(a)" such that it pleads the "underlying cause of action and its lost remedy ... by allegations ... sufficient to give fair notice to the defendant." *Id.* at 416, 417–18. To meet this requirement, a plaintiff must show (1) the loss of a nonfrivolous and arguable claim that is "more than a mere hope;" (2) the defendant's acts that caused the loss of the claim; and (3) a remedy that may be awarded as recompense but not otherwise available in some suit that may yet be brought." *Id.* at 415–16; *see also Clark v. Johnston,* 413 Fed. App'x. 804, 816 (6th Cir. 2011).

The Sixth Circuit has held that *Heck v. Humphrey*, 512 U.S. 477 (1994) bars an access to the courts claim that necessarily implies invalidity to a conviction or sentence. *Sampson v. Garrett*, 917 F.3d 880 (6th Cir. 2019) In *Sampson* the Sixth Circuit held that plaintiff's access to the courts claim alleging that prison officials

deprived him of transcripts, exhibits, and other records for use in his direct appeal was barred by *Heck* because "a favorable judgment on [the] access-to- the-court claim would necessarily bear on the validity of his underlying judgment, because that is exactly what he says the defendant's kept him from contesting fairly." *Id.* at 882.

Carter alleges that Defendants refusal to photocopy portions of his Michigan Court Rule § 6.500 motion for relief from judgment and the failure of his original copy to be sent to the state court caused him to lose the opportunity to challenge his underlying convictions and led to the inability to file an amended petition for writ of habeas corpus in federal court. In the opinion of the undersigned, Carter's access to the courts claim fails for three reasons.

First, as set forth in *Sampson,* Carter's access to the courts claim is barred by *Heck* because it necessarily implies the invalidity of his conviction. Carter's motion for relief from judgment and his habeas action challenge his state convictions.

Second, Carter has failed to show that he was pursuing nonfrivolous claims in his motion for relief from judgment. In addition, Carter has failed to show that he intended to pursue a nonfrivolous constitutional claim in his motion for relief from judgment that could potentially be successfully raised in an amended petition for writ of habeas corpus. The Court has reviewed Carter's complaint. He referred to the "non-frivolous" arguments he intended to raise, but failed to specify what those arguments would be. Carter did not comply with Federal Rule of Civil Procedure 8(a) by properly pleading his underlying cause of action. Thus, Carter failed to set

forth allegations in his complaint that show that he lost the opportunity to pursue a nonfrivolous underlying claim.  *Christopher*, 536 U.S. at 415.

Third, Carter was denied a portion of his photocopy request because he could not pay for the full number of copies requested and he had the ability to copy some documents by hand.  Carter has made no effort to explain to the Court why every document that he asked Defendants to photocopy had to be included in his state court motion for relief from judgment.

### V. Due Process

Carter says that Defendants violated his right to due process.  Carter alleges that Defendants Supnick and Mattson denied him access to the legal writer program and that Defendants Naeyaert and Lundquist destroyed his motion for relief judgment.  The due process clause prevents the states from denying litigants the use of established adjudicatory procedures, when such an action would be the equivalent of denying the litigant an opportunity to be heard upon their claimed rights.  *Boddie v. Connecticut*, 401 U.S. 371, 380 (1971); *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 429-30 (1982).

Carter was approved for and provided a legal writer.  The legal writer informed Carter that he was not authorized to do "type jobs."  (ECF No. 1-1, PageID.39).  In other words, the legal writer informed Carter that he was not going to make a typed copy of his motion for relief from judgment. The legal writer further explained to Carter that he would not help him make copies of his motion by typing it out after Carter had been denied copies for failing to pay for them.  (*Id.*)

Defendants Supnick and Mattson attest that although they help oversee the legal writer program, the legal writer uses his judgment to distinguish between legal work and a "type job." (ECF No. 47-2, PageID.359 and ECF No. 47-3, PageID.364.) In the opinion of the undersigned, Carter has not shown that Defendants Supnick or Mattson denied him access to a legal writer.

Similarly, Carter has failed to show that Defendants Naeyaert and Lundquist violated his right to due process by destroying his motion for relief from judgment. Carter has simply speculated that his motion was destroyed because it was not received by the state court. Carter admits that his motion for relief from judgment was weighed and post marked and that he received a disbursement authorization showing that his legal mail had been sent out of the facility. (ECF No. 1, PageID.11.) Carter attached the disbursement authorization to his complaint as an exhibit:

> Case 2:18-cv-00003-GJQ-MV   ECF No. 1-1 filed 01/10/18   PageID.35   Page 11 of 21
>
> **MICHIGAN DEPARTMENT OF CORRECTIONS**                                      4835-3318
> **DISBURSEMENT AUTHORIZATION (EXPEDITED LEGAL MAIL - PRISONER)**       CSJ-318
>
> Please PRINT clearly illegible and/or incomplete forms will not be processed.
>
> Lock: A-240    Institution: LMT
>
> Prisoner Number: 645573    Prisoner Name (Print Clearly): Thomas Carter
>
> ☑ Legal Postage   ☐ Filing Fee $_____   ☐ Certified Mail (Must Be a Court Ordered Requirement)
>
> ☐ New Case   ☑ Case Number: 10-013036-01(FC)
>
> Pay To: MDOC Court Clerk's Office
>
> Mailing Address: Circuit Court Judge, Third Judicial Circuit of MI. Frank Murphy Hall of Justice 1441 St. Antoine, Room 803 Detroit, MI 48226    RE: Motion For Relief from Judgment
>
> The following section must be completed in Authorizing Staff Member's presence.
>
> Prisoner Signature: Thomas X Carter    Date & Time Submitted: 1-28-16  8:30AM
>
> Received By (Print Name & Title): PC J. Naeyaert    Staff Signature: [signature]
>
> Date & Time Received by Authorizing Staff: 1-29-16  0830
>
> **Authorization Denied:**
>
> ☐ Does not meet definition of legal mail or court filing fee as identified in CFA OP 05.03.118.
> ☐ Not hand delivered to authorizing staff member.              ☐ New case or case number not on form.
> ☐ Does not include court order for handling as certified mail.  ☐ Other _____
> ☐ Prisoner refused to sign & date in staff member's presence.
>
> Section below to be completed by Mail Room Staff
>
> Placed in Mail by (Print Name & Title): Lindquist (OCA)    Signature: [signature]
>
> Postage Amount: $ 3.18    Date & Time placed in outgoing Mail: 2/1/16  9CC
>
> Only Business Office Staff are to Write in the Section Below

(ECF No. 1-1, PageID.35.)

Carter has speculated that Defendants destroyed his motion for relief from judgment because the state court indicated that it was not received. In the opinion of the undersigned, there exists no evidence to support this conclusory allegation.

- 14 -

Therefore, it is respectfully recommended that the Court dismiss Carter's due process claims.

## VI. Retaliation

Carter says that Defendants took retaliatory actions against him. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id*. Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)). The Sixth Circuit has also employed a burden-shifting approach:

> Once the plaintiff has met his burden of establishing that his protected conduct was a motivating factor behind any harm, the burden of production shifts to the defendant. If the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on summary judgment.

Thaddeus-X, 175 F.3d at 399.

### 1. Photocopies

Carter alleges that Defendants Supnick and Mattson retaliated against him when they denied photocopies. Carter has failed to point to protected conduct prior

to the denial of his photocopy request. Carter filed grievances *after* he was denied photocopies. Carter alleges that his photocopy request was denied in November of 2015. (ECF No. 1, PageID.8-9.) He then sent letters complaining about the denial and filed grievances. Carter was denied photocopies because he could not pay for them and had the ability to hand copy most of the documents. In the opinion of the undersigned, Carter's retaliation claim regarding the failure to receive photocopies fails because Carter did not engage in prior protected conduct and because the denial of photocopies was based on Carter's failure to pay for them when he had the ability to hand copy most the documents.[3]

### 2. Legal Writer

Carter says that Defendants Supnick and Mattson denied him access to the legal writer program. As previously explained, Carter was approved for a legal writer. The legal writer informed Carter that he would not do a "type job" for Carter. Defendants did not make that determination.

### 3. Destruction of Motion for Relief from Judgment

Carter says that Defendants Lundquist and Naeyaert destroyed his motion for relief from judgment. Carter bases this claim solely on the fact that the Wayne County Circuit Court informed him by letter that they never received his motion for relief from judgment. Carter's allegation is nothing more than speculation. As

---

[3] In addition, Carter failed to comply with LMF OP 05.03.116A by providing all information necessary to show that he was entitled to a photocopy loan and when some documents did not need to be copied for the motion for relief from judgment.

- 16 -

previously explained, the facts show that Carter's motion for relief from judgment was sent out of the prison.

### 4. Transfer to URF

Carter alleges that Defendant Naeyaert retaliated against him by transferring him to URF which is a more restrictive prison. Defendant Naeyaert attests that he did not transfer Carter, but merely completed a Security Classification Screen upon request by the Transfer Coordinator. (ECF No. 48, PageID.374.) Carter was transferred from Alger Correctional Facility to URF. (*Id.*, PageID.375.) Carter was at the same confinement level at both prisons. (*Id.*) A prisoner transferred between prisons at the same confinement level does not lose any rights or privileges. (*Id.*)

In the opinion of the undersigned, Carter has failed to show that his transfer to URF was adverse. "[A]n adverse action is one that would 'deter a person of ordinary firmness' from the exercise of the right at stake." *Thaddeus–X*, 175 F.3d at 396 (quoting *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982)). The Sixth Circuit has stated that "[s]ince transfers are common among prisons, ordinarily a transfer would not deter a prisoner of ordinary firmness from continuing to engage in protected conduct." *Siggers-El v. Barlow*, 412 F.3d 693, 701-02 (6th Cir. 2005) (citing *Smith v. Yarrow*, 78 F. App'x. 529, 543-44 (6th Cir. 2003)). But a limited exception applies when there are foreseeable consequences to the transfer that interfere with the prisoner's ability to access the courts. *Id.* at 702. Carter has not alleged that he was denied access to his attorney or a prison job as a result of his

transfer. Carter has failed to establish that his transfer was something other than routine.

## VII. Qualified Immunity

As an alternative argument, Defendants move to dismiss Carter's damages claims by asserting qualified immunity from liability. "Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability from civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Phillips v. Roane County*, 534 F.3d 531, 538 (6th Cir.2008) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Determining whether the government officials in this case are entitled to qualified immunity generally requires two inquiries: "First, viewing the facts in the light most favorable to the plaintiff, has the plaintiff shown that a constitutional violation has occurred? Second, was the right clearly established at the time of the violation?" *Id.* at 538-39 (citing *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir.2006).

"A right is 'clearly established' for qualified immunity purposes if 'it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Humphrey v. Mabry*, 482 F.3d 840, 847 (6th Cir. 2007) (quoting *Saucier v. Katz*, 533 U.S. 194, 202, 121 S. Ct. 2151, 2156 (2001)). The inquiry whether the right was clearly established "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Saucier*, 533 U.S. at 201, 121 S. Ct. at 2156; *see also Plumhoff v. Rickard*, 572 U.S. 765, 779, 134 S. Ct. 2012, 2023 (2014)

(directing courts "not to define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced") (internal quotation marks and citations omitted). Thus, the doctrine of qualified immunity "protects all but the plainly incompetent or those who knowingly violate the law." *Humphrey*, 482 F.3d at 847 (internal quotation marks omitted).

"The relevant inquiry is whether existing precedent placed the conclusion" that the defendant violated the plaintiff's rights "in these circumstances 'beyond debate.'" *Mullenix v. Luna*, 36 S.Ct. 305, 309 (2015), citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). In the undersigned's opinion, Defendants are entitled to the defense of qualified immunity from liability. Carter has failed to establish that any Defendants took actions that violated his Constitutional rights.[4]

---

[4] To the extent that Defendants assert that they are entitled to summary judgment on Plaintiff's official capacity claims, such claims do not state a claim upon which relief can be granted. *See Will v. Michigan Department of State Police*, 491 U.S. 58 (1989) (claims against a state agency or an official in his/her official capacity are claims against the state, and are not claims against a "person" subject to Section 1983 liability); *Frederick v. Abramajtys*, No. 94-1935, 1995 WL 564321, **1 (6th Cir. Sept. 21, 1995) (unpublished). Moreover, the Eleventh Amendment bars suit against the State or one of its agencies in federal court unless the state has given express consent, regardless of the relief sought. *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100 (1984), overruled in part on other grounds, *Will*, 491 U.S. 58; *Alabama v. Pugh*, 438 U.S. 781, 782 (1978) (State and Board of Corrections). The State of Michigan has not consented to civil rights suits in the federal courts. *See Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). The Eleventh Amendment therefore bars official-capacity suits for damages against its employees.

## VIII. Recommendation

For these reasons, I respectfully recommend that the Court grant Defendants' motion for summary judgment (ECF No. 46).

Acceptance of this recommendation will result in the dismissal of this action.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated: February 5, 2020            /s/ *Maarten Vermaat*
                                   MAARTEN VERMAAT
                                   U.S. MAGISTRATE JUDGE